IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAMES REDDING
                                    :
                                    :
     v.                             :   Civil Action No. DKC 11-3141
                                    :
AMERIPRISE AUTO &
HOME INSURANCE, et al.              :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this action are motions (1) to dismiss by Defendants Ameriprise Auto & Home Insurance ("Ameriprise"), Neurocare Associates, LLC ("Neurocare"),[1] and Rosa Rehab, LLC ("Rosa Rehab") (ECF Nos. 4, 6, 13), and (2) to dismiss or, alternatively, for summary judgment by Defendant Peter Mann (ECF No. 11). Also pending are two papers filed by Plaintiff James Redding: (1) a motion for leave to file supplemental appendix (ECF No. 19), and (2) a surreply that will be construed as a motion for voluntary dismissal of the complaint against Mr. Mann pursuant to Fed.R.Civ.P. 41(a)(2) (ECF No. 20).

The relevant issues have been briefed, and the court now rules pursuant to Local Rule 105.6, no hearing being deemed

---

[1] Neurocare filed a Statement of Corporate Affiliation and Financial Interest pursuant to Local Rule 103.3, stating that it was misnamed in the complaint and that its proper name is Neurocare Associates, P.A. (ECF No. 7). The clerk will be directed to change Neurocare's name on the docket accordingly.

necessary.   For the reasons that follow, the motions to dismiss filed by Ameriprise, Neurocare, and Rosa Rehab will be granted, as will Plaintiff's request for voluntary dismissal as to Mr. Mann.   Plaintiff's motion for leave to file a supplemental appendix will be denied, and Mr. Mann's motion to dismiss or, alternatively, for summary judgment will be denied as moot.

**I.   Background**

    **A.   Factual Background**

The following limited facts are either asserted or can be inferred from Plaintiff's sparse complaint.   Around 2004, Plaintiff was involved in an automobile accident and suffered injuries to his back.   He subsequently underwent cervical disc surgery at Neurocare.[2]   Several months after his surgery, Neurocare directed him to undergo "lower back therapy" at Rosa Rehab.   (ECF No. 1, at 5).   Neurocare's instructions to Rosa Rehab specifically "excluded neck manipulation."   (*Id.*).   On November 5, 2008, Dr. Aekta Erry, a physician at Rosa Rehab, entered the chiropractic services room and "immediately began jerking Plaintiff's head from side to side while Plaintiff was

---

    [2] Plaintiff later learned that Neurocare had "placed its patients at risk" by violating several of Maryland's "Radiation Management" regulations with regard to its use of radiation machines.   (ECF No. 1, at 5).

    Plaintiff's complaint does not contain numbered paragraphs or page numbers.   Accordingly, the page numbers cited here are those provided by the ECF system.

laying on his back." (*Id.*). "Any relief that Plaintiff had acquired from Neurocare['s] . . . [prior] surgical procedure was destroyed." (*Id.* at 6). Indeed, Dr. Erry's procedure "caused Plaintiff's left arm to atrophy and weaken," "damage[d] Plaintiff's cervical discs," and added to Plaintiff's "ongoing medical costs." (*Id.*). When Plaintiff attempted to contact Neurocare for follow-up medical care, it refused due to "biomedical contamination issues" as well as complaints about Dr. Erry's actions. (*Id.*).

In addition to these events, litigation ensued between Plaintiff and Ameriprise, Plaintiff's automobile insurance company, following the accident. Mr. Mann represented Plaintiff during part of this litigation, and the parties entered into a binding arbitration agreement to resolve Plaintiff's outstanding claims. According to Plaintiff, Ameriprise "refused to honor" the agreement when it "knowingly engaged in a conflict of interest by acquiring the services of a public officer with alleged past business relationships" with its law firm. (*Id.* at 4). Plaintiff fired Mr. Mann for "fail[ing] to alert" him about this conflict. (*Id.*). Although Plaintiff requested that Mr. Mann return all case documents to him after terminating the representation, Mr. Mann refused to do so.

### B.   Procedural Background

On November 3, 2011, Plaintiff, proceeding *pro se*, filed a three-count complaint in this court against Ameriprise, Neurocare, Rosa Rehab, and Mr. Mann.   In count one, he alleges fraud against Ameriprise; in count two, he alleges a claim for "breach of fiduciary duty" against Mr. Mann;[3] and in count three, he alleges negligence claims against Neurocare and Rosa Rehab. Plaintiff seeks $500,000 in damages, an injunction against Neurocare to "repeat Plaintiff's surgical procedure without cost to Plaintiff, and the return of Plaintiff's documents from Mr. Mann," and for the court to "[o]rder American Express [Ameriprise] to transfer all future charitable contributions from District of Columbia churches to: Paralyzed Veterans of America organizations." (*Id.* at 7).

On December 14, 2011, Ameriprise filed a motion to dismiss for failure to state a claim.   (ECF No. 4).   Two weeks later, Neurocare moved to dismiss on the ground that Plaintiff had

---

[3] The allegations in count two briefly reference Ameriprise, but they only appear to do so in an effort to clarify Plaintiff's claim against Mr. Mann.   Ameriprise interprets the complaint in this manner, moving to dismiss the entire complaint against it by arguing that count one (but not count two) fails to state a claim.   Plaintiff responds by opposing Ameriprise's request for dismissal, but he does so only by asserting that count one asserts a plausible cause of action.   Accordingly, count two will be construed as asserting a breach of duty claim against Mr. Mann only.

failed to file his medical malpractice claim with the Health Care Alternative Dispute Resolution Office ("HCADRO") before bringing suit, as required by the Maryland Health Care Malpractice Claims Act, Md. Code Ann., Cts. & Jud. Proc. §§ 3-2A-01 *et seq.* (ECF No. 6).[4]  On December 30, 2011, Plaintiff filed an "Opposition to Defendants' Motion to Dismiss," addressing only the arguments raised by Ameriprise. (ECF No. 9).  Neurocare replied to Plaintiff's opposition approximately three weeks later. (ECF No. 17).  Ameriprise has not filed a reply.

On January 3, 2012, Mr. Mann filed a motion to dismiss or, in the alternative, for summary judgment on Plaintiff's claim for "breach of fiduciary duty." (ECF No. 13).  In the motion, Mr. Mann asserted that he had made Plaintiff's files available for pick-up at an earlier date, and that Plaintiff had failed to retrieve them.  Plaintiff subsequently opposed Mr. Mann's motion, but stated that he would "immediately present a motion to dismiss the complaint against Mr. Mann" if Mr. Mann would promptly provide him with those files. (ECF No. 15, at 3).  On January 19, 2012, Mr. Mann replied to Plaintiff's opposition, noting that he had provided Plaintiff with all of his files as

---

[4] In accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court mailed a notice to Plaintiff after each Defendant had filed a dispositive motion. (ECF Nos. 5, 8, 12, 14).

requested.    Approximately   one   week   later,   Plaintiff   filed   a "reply to [Mr. Mann]'s reply" and requested that the court "enter an Order dismissing Plaintiff's Complaint against" Mr. Mann.  (ECF No. 20, at 1-2).

During this time, Rosa Rehab also filed a motion to dismiss Plaintiff's   medical   malpractice   claim   on   the   same   ground   as Neurocare.   On January 19, 2012, Plaintiff filed a document "in opposition   to   Defendant's   motion   to   dismiss,"   addressing   the merits of Rosa Rehab's argument regarding his failure to comply with the Maryland Health Care Malpractice Claims Act.   (ECF No. 18, at 1).   He simultaneously submitted a "motion for leave to file   supplemental   appendix,"   which   included   a   letter   from   the Department   of   Health   and   Mental   Hygiene   ("DHMH")   regarding   a 2008 complaint he had filed against Dr. Erry.   (ECF No. 19).   On January   26,   2012,   Plaintiff   filed   yet   another   document specifically opposing "Rosa Rehab's Motion to Dismiss," which presented   additional   arguments   regarding   applicability   of   the Maryland Health Care Malpractice Claims Act.   (ECF No. 21).[5]

---

[5]  Plaintiff filed this supplemental brief within the time period set forth in Local Rule 105(2)(a) and Federal Rule of Civil   Procedure   6(d).     Accordingly,   the   arguments   presented therein will be considered when resolving Rosa Rehab's motion to dismiss.

## II.  Plaintiff's Request to Dismiss Mr. Mann From This Action Will Be Granted

In his complaint, Plaintiff requested that Mr. Mann return all files relating to his automobile accident.  After Mr. Mann returned those files, Plaintiff requested that the court "dismiss[] Plaintiff's Complaint against" Mr. Mann.  (ECF No. 20, at 1-2).  Given the nature of Plaintiff's request, this filing will be construed as a motion for voluntary dismissal made pursuant to Federal Rule of Civil Procedure 41(a).

Despite the use of the word "action" in the Rule, a majority of courts – including this court and others throughout the Fourth Circuit – have permitted plaintiffs to move for voluntary dismissal of fewer than all defendants pursuant to Rule 41(a).  *See, e.g.*, *Wilson v. City of San Jose*, 111 F.3d 688, 692 (9th Cir. 1997) (concluding that a plaintiff may move under Rule 41(a) to dismiss "some or all of the defendants" in a case); *DirecTV, Inc. v. Benson*, 333 F.Supp.2d 440, 443 & n.3 (M.D.N.C. 2004) (using Rule 41 to dismiss only one defendant from a case and noting that the Fourth Circuit had accepted this approach "sub silentio" (citing *Manning v. S.C. Dep't of Highway & Pub. Transp.*, 914 F.2d 44, 46 (4th Cir. 1990))); *Ownby v. Cohen*, No. A. 3:02CV00034, 2002 WL 1877519, at *3 & n.1 (W.D.Va. Aug. 15, 2002) (citing Wright & Miller, *supra*, for the proposition that a plaintiff may dismiss an action against fewer

than all defendants by filing a Rule 41(a) motion); *Eniola v. Leasecomm Corp.*, 214 F.Supp.2d 520, 523 (D.Md. 2002) (permitting dismissal of only one defendant pursuant to Rule 41(a)(1)); *Leroux v. Lomas & Nettleton Co.*, 626 F.Supp. 962, 965 (D.Mass. 1986) ("[W]here Rule 41 speaks of an 'action,' this means all of the claims against any one defendant, and not necessarily all of the claims against all defendants."). Here, Mr. Mann had filed a motion to dismiss or, alternatively, for summary judgment – which he supported with several exhibits - prior to Plaintiff's motion for voluntary dismissal. Thus, Rule 41(a)(2) applies.

Rule 41(a)(2) provides that "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." The purpose of this rule is "to allow voluntary dismissals unless the parties will be unfairly prejudiced." *Davis v. USX Corp.*, 819 F.2d 1270, 1273 (4th Cir. 1987) (citations omitted). The factors that should guide a district court in deciding a motion under Rule 41(a)(2) include "[any] opposing party's effort and expense in preparing for trial, excessive delay and lack of diligence on the part of the movant, insufficient explanation of the need for a voluntary dismissal, and the present stage of litigation." *Miller v. Terramite Corp.*, 114 F.App'x. 536, 540 (4th Cir. 2004) (quoting *Phillips USA, Inc., v. Allflex USA, Inc.*, 77 F.3d 354, 358 (10th Cir. 1996)).

These factors all weigh in favor of granting Plaintiff's motion.  Plaintiff moved for voluntary dismissal of the action against Mr. Mann on January 27, 2012, within days of receiving the documents he had long sought, rendering his claim against Mr. Mann moot.  Mr. Mann's motion to dismiss or, alternatively, for summary judgment will be denied as moot.

## III. The Motions to Dismiss Filed by Ameriprise, Neurocare, and Rosa Rehab Will Be Granted

### A.   Standard of Review

Ameriprise, Neurocare, and Rosa Rehab have each moved to dismiss Plaintiff's claims pursuant to Rule 12(b)(6).  The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint.  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007).  That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

At this stage, the court must consider all well-pleaded allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).  In evaluating the complaint, the court need not accept unsupported legal allegations.  *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989).  Nor must it agree with legal conclusions couched as factual allegations, *Iqbal*, 556 U.S. at 678, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 677-78 (quoting Fed.R.Civ.P. 8(a)(2)).  Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

Finally, while courts generally should hold *pro se* pleadings "to less stringent standards than formal pleadings

drafted by lawyers," they may nevertheless dismiss complaints that lack a cognizable legal theory or that fail to allege sufficient facts under a cognizable legal theory. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Turner v. Kight*, 192 F.Supp.2d 391, 398 (D.Md. 2002), *aff'd*, 121 F.App'x. 9 (4th Cir. 2005).

## B. Plaintiff Fails to State Any Cognizable Claim Against Ameriprise

Plaintiff's fraud allegations against Ameriprise consist of a single sentence stating that Ameriprise "knowingly engaged in a conflict of interest by acquiring the services of a public officer [who had] alleged past business relationships" with the law firm representing Ameriprise. (ECF No. 1, at 4).[6] Ameriprise has moved to dismiss, contending that Plaintiff's assertion is insufficient to state a cause of action for fraud.

The elements of fraud in Maryland are:[7]

---

[6] In his opposition, Plaintiff presents numerous new factual allegations regarding this purported conflict of interest. "[I]t is axiomatic," however, "that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984); *see also Zachair, Ltd. v. Driggs*, 965 F.Supp. 741, 748 n.4 (D.Md. 1997) (reasoning that a plaintiff "is bound by the allegations contained in [his] complaint and cannot, through the use of motion briefs, amend the complaint"), *aff'd*, 131 F.3d 1162 (1998) (table opinion). Accordingly, the new facts about the alleged conflict that Plaintiff asserts in his opposition papers need not be considered when resolving Ameriprise's motion to dismiss. Even if they were considered, however, for the reasons explained later in the memorandum opinion, Plaintiff's claim against Ameriprise would nonetheless be dismissed.

> (1) that the defendant made a false
> representation to the plaintiff, (2) that
> its falsity was either known to the
> defendant or that the representation was
> made with reckless indifference as to its
> truth, (3) that the misrepresentation was
> made for the purpose of defrauding the
> plaintiff, (4) that the plaintiff relied on
> the misrepresentation and had the right to
> rely on it, and (5) that the plaintiff
> suffered compensable injury resulting from
> the misrepresentation.

*Md. Envtl. Trust v. Gaynor*, 370 Md. 89, 97 (2002).

Additionally, active concealment of a material fact, "characterized by deceptive acts or contrivances intended to hide information, mislead, avoid suspicion, or prevent further inquiry into a material matter," may also constitute common law fraud because concealment is analogous to intentional misrepresentation. *United States v. Colton*, 231 F.3d 890, 899 (4th Cir. 2000) (citing *Stewart v. Wyo. Cattle Ranche Co.*, 128 U.S. 383, 388 (1888)). Separately, where a plaintiff alleges fraud with regard to mere nondisclosure of a material fact, he must establish that the defendant owed a duty of care to the plaintiff. *Id.* ("[S]ilence as to a material fact (nondisclosure), without an independent disclosure duty, usually does not give rise to an action for fraud . . . .").

---

[7] Although the complaint does not specify where the events giving rise to this claim took place, neither party contends that Maryland law does not apply.

In addition to satisfying Rule 8(a), a plaintiff asserting fraud is subject to the heightened pleading standard set forth in Rule 9(b).  *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783-84 (4th Cir. 1999).  Rule 9(b) states that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other condition of mind of a person may be averred generally."  The word "circumstances" is interpreted "to include the 'time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what [was] obtained thereby.'"  *Superior Bank, F.S.B. v. Tandem Nat'l Mortg., Inc.*, 197 F.Supp.2d 298, 313-14 (D.Md. 2000) (quoting *Windsor Assocs. v. Greenfeld*, 564 F.Supp. 273, 280 (D.Md. 1983)).  The purposes of Rule 9(b) are to provide the defendant with sufficient notice of the basis for the plaintiff's claim, protect the defendant against frivolous suits, eliminate fraud actions where all of the facts are learned only after discovery, and safeguard the defendant's reputation.  *Harrison*, 176 F.3d at 784.  In keeping with these objectives, a "court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial and (2) that [the]

13

plaintiff has substantial prediscovery evidence of those facts."
*Id.*

Here, Plaintiff has failed to plead facts to state a claim for fraud against Ameriprise.  The complaint neither identifies any alleged false statements made by Ameriprise regarding the conflict, nor does it assert that Ameriprise concealed this conflict or otherwise failed to disclose it despite having a duty to do so.  Additionally, the complaint wholly fails to allege that Plaintiff relied on any misrepresentation, concealment, or actionable nondisclosure and suffered injury as a result.[8]  With no facts to support these key elements of Plaintiff's fraud claim, the complaint against Ameriprise must be dismissed, and it is unnecessary to consider whether his

---

[8] The additional facts set forth in Plaintiff's opposition related to the purported conflict also fail to state a claim for fraud.  According to Plaintiff, Ameriprise wanted to select an arbitrator from Creative Dispute Resolutions to arbitrate claims between the parties because that company had connections with Ameriprise's law firm.  Ameriprise informed Plaintiff that it "would agree to use William E. Hewitt, Jr. as the arbitrator." (ECF No. 9, at 6).  When Plaintiff discovered that Mr. Hewitt had prior business relationships with this law firm, he opposed Mr. Hewitt's appointment.  At the time that Plaintiff filed his opposition on December 30, 2011, the parties had not yet agreed upon an arbitrator.

Assuming *arguendo* that these assertions are sufficient to constitute some form of concealment or actionable nondisclosure, Plaintiff again fails to allege reliance or resulting injury. Indeed, these new facts actually support the opposite conclusion.

allegations satisfy the heightened pleading standard of Rule 9(b).[9]

### C.   Plaintiff's Failure to Comply with the Maryland Health Care Malpractice Claims Act Requires Dismissal Without Prejudice of His Claims Against Neurocare and Rosa Rehab

Neurocare and Rosa Rehab have moved to dismiss the claims against them because Plaintiff has not complied with the conditions set forth in the Maryland Health Care Malpractice Claims Act ("the Act").[10]   The Act reflects Maryland's response

---

[9] Plaintiff states in his opposition that he has "allege[d] facts about 'conflict of interest,' in addition to the establishment of fraud." (ECF No. 9, at 8).   This statement suggests that Plaintiff may have intended "Count One: Fraud" to encompass more than one cause of action.   To the extent that Plaintiff did intend this count to allege a separate cause of action for "conflict of interest," he cites no authority – nor is the court aware of any – holding that "conflict of interest" is a cognizable cause of action in this context.

[10] Although some early cases suggested that compliance with the Maryland Health Care Malpractice Claims Act was an issue to be resolved under Rule 12(b)(1), *see, e.g.*, *Davison v. Sinai Hosp. of Balt., Inc.*, 462 F.Supp. 778, 779 (D.Md. 1978), *aff'd*, 617 F.2d 361 (4th Cir. 1980), the Court of Appeals of Maryland has since held that such compliance is not a jurisdictional prerequisite, *Tranen v. Aziz*, 304 Md. 605, 612 (1985).   Rather, it is a "condition precedent" to instituting an action for medical malpractice in Maryland state or federal courts. *Crawford v. Leahy*, 326 Md. 160, 165 (1992); *see also Lewis v. Waletzky*, 576 F.Supp.2d 732, 738 (D.Md. 2008) [hereinafter *Lewis I*] (granting a motion to dismiss due to a plaintiff's failure to file her medical malpractice claims with HCADRO and noting that failure to satisfy this requirement "does not take away the subject matter jurisdiction" of a court (citing *Oxtoby v. McGowan*, 294 Md. 83, 91-92 (1982))), *unrelated question on appeal certified by* No. 09-1251, 2010 WL 1734976 (4th Cir. Apr. 30, 2010), *certified question answered by* 422 Md. 647 (2011).

to a "medical malpractice crisis" that began during the 1970s. *Davison*, 462 F.Supp. at 779 (D.Md. 1978).   Initially, it required plaintiffs asserting medical malpractice claims above a certain jurisdictional amount to undergo arbitration before instituting an action in court.   *Lewis I*, 576 F.Supp.2d at 736 (citing *Davison*, 462 F.Supp. at 779).[11]   The General Assembly subsequently amended the Act, however, and permitted plaintiffs to waive unilaterally the arbitration requirement.   Md. Code Ann., Cts. & Jud. Proc. §§ 3-2A-06A, 3-2A-06B.   Despite this change, the Act still requires a potential plaintiff to file his medical malpractice claim as well as a certificate from a qualified expert with HCADRO *prior* to filing a claim in state or federal court.   *See id.* § 3-2A-04(a)(1)(i) (stating that "[a] person having a claim against a health care provider for damage due to medical injury shall file the claim with the Director [of HCADRO]"); *id.* § 3-2A-04(b)(1) (noting that a plaintiff must file "a certificate of a qualified expert with the Director attesting to departure from standards of care, and that the departure from standards of care [was] the proximate cause of

---

[11] Neither party contends that the damages sought in this case do not satisfy the jurisdictional minimum set forth in the Act.

the alleged injury, within 90 days from the date of the [HCADRO]

complaint"); *Lewis I*, 576 F.Supp.2d at 736 (citing cases).[12]

Plaintiff does not contest Neurocare and Rosa Rehab's

assertion that his claims against them are for medical

malpractice and, therefore, fall under the Act.[13]  Indeed, he

---

[12] The parties apparently agree that Maryland law applies to
Plaintiff's medical malpractice claims against Neurocare and
Rosa Rehab.  Even if they did not, however, because, "in the
choice-of-law context," the Act's requirements are procedural,
rather than substantive, they would apply to a medical
malpractice claim filed in any Maryland court regardless of
whether Maryland law otherwise governed the claim.  *Lewis v.
Waletzky*, 422 Md. 647, 658-67 & n.9 (2011) [hereinafter *Lewis
II*] (concluding that a plaintiff who brought suit in Maryland,
but may have suffered injury in the District of Columbia, was
nonetheless required to comply with the Act's filing
requirements).

In *Lewis II*, the Maryland Court of Appeals answered a
certified question from the Fourth Circuit regarding whether
"Maryland recognize[d] the public policy exception, or any other
exception, to *lex loci delicti* based on the Maryland Health Care
Malpractice Claims Act."  *Id.* at 652.  The plaintiff in *Lewis I*,
who had not complied with the Act, had appealed to the Fourth
Circuit after the district court concluded that the public
policy exception required such compliance even though her
medical injury purportedly occurred in another jurisdiction.
The Maryland Court of Appeals noted that all parties had merely
"assumed that the filing requirement [was] part of Maryland's
substantive law."  *Id.* at 658.  Declining to "make the same
assumption," the court extensively analyzed the "procedural-
substantive distinction in the choice-of-law context" before
concluding that the Act is procedural.  *Id.* at 658-67 & n.9.

[13] As previously noted, in addition to allegations related
to Dr. Erry, Plaintiff asserts that Neurocare "placed its
patients at risk" by using radiation machines in a manner that
did not comply with state regulations.  (ECF No. 1, at 6).
Neurocare interprets all of Plaintiff's allegations – including
this one – to allege medical malpractice and, therefore, to be

could not, as his claims against both Defendants purportedly stem from doctor-patient relationships in which Defendants either "render[ed] or fail[ed] to render health care," thus causing Plaintiff to suffer various injuries, including injuries to his arm and cervical discs. *Brown v. Rabbitt*, 300 Md. 171, 175 (1984) ("If health care is or should be rendered and damage results therefrom, then it is a claim under the Act."). Plaintiff also does not allege that he complied with the Act by filing a claim and certificate of a qualified expert with HCADRO before instituting this action.

Plaintiff requests that the court stay the case while he complies with the Act's procedural requirements because he was allegedly informed in 2008 "that the only avenue to resolve complaints against Maryland Physicians was to file written complaints with DHMH." (ECF No. 18, at 1). The court must decline Plaintiff's request. The Act's requirements constitute a "condition precedent" to pursuing medical malpractice claims in all Maryland courts. *Carroll v. Konits*, 400 Md. 167, 180-81 (2007); *Su v. Weaver*, 313 Md. 370, 377 (1988); *see also Davison*, 462 F.Supp. at 778-79 (concluding that the Act was applicable in Maryland state and federal courts). Indeed, a plaintiff's failure to satisfy them prior to bringing suit has long been

subject to the Act's procedural requirements. Plaintiff also does not dispute this conclusion.

held to *require* dismissal without prejudice, regardless of the circumstances. *Lewis I*, 576 F.Supp.2d at 738 (reasoning that the "Maryland Court of Appeals ha[d] taken a strong position" against staying such suits); *see also Anderson v. United States*, No. CCB-08-3, 2009 WL 890094, at *2 (D.Md. Mar. 26, 2009) (explaining that Maryland courts would be obligated to dismiss an action without prejudice, rather than stay the proceedings, if a plaintiff had failed to comply with the Act's procedural requirements); *Breslin v. Powell*, 421 Md. 266, 270 (2011) ("[T]he plain language of the [Act] is clear, and requires dismissal *without* prejudice of the underlying claim for [failure to comply with the Act's requirements]."); *Tranen*, 304 Md. at 612 ("[T]he statutory context of these . . . directives plainly shows that compliance with them is mandatory and that noncompliance mandates dismissal.").[14]   Accordingly, Plaintiff's claims against Neurocare and Rosa Rehab must be dismissed without prejudice due to his failure to comply with the Act's procedural requirements.[15]

---

[14] To the extent Plaintiff further intends to assert that "good cause" exists for his failure to comply with the Act's procedural requirements, the relevant statutory provisions do not contain a "good cause" exception.   Given that numerous other sections of the Act do contain such an exception, *see, e.g.*, Md. Code Ann., Cts. & Jud. Proc. § 3-2A-04(b)(5), the absence of the exception in this context is instructive.

19

**IV. Plaintiff's Motion for Leave to File a Supplemental Appendix Will Be Denied**

Plaintiff has moved for leave to file a supplemental appendix with the court regarding his medical malpractice claims against Neurocare and Rosa Rehab.  Plaintiff appears to make two unrelated requests for leave in the motion, making it difficult to discern the motion's exact purpose.  Regardless of which request Plaintiff intended to make, however, Plaintiff's motion will be denied.

First, Plaintiff states that he is "mov[ing] for leave to file documents with [HCADRO]," presumably while his case remains pending in this court.  (ECF No. 19, at 1).  For the reasons explained above, the court cannot grant this request, and Plaintiff's medical malpractice claims must be dismissed without prejudice because he has not complied with the Act's procedural requirements.

Second, Plaintiff states that the "supplemental appendix includes materials received from [HCADRO]," suggesting that his

---

[15] Plaintiff also asserts that Rosa Rehab's request for dismissal "is based on discriminatory privileges and special consideration," which violates his federal rights.  (ECF No. 21, at 2-4).  As support for this argument, Plaintiff relies on three cases in which John Peter Rosa, Rosa Rehab's resident agent, faced charges for various traffic offenses and did not contend that the Act's procedural requirements were applicable.  Because none of those cases involved Rosa Rehab or claims for medical malpractice, however, they are inapposite in the present action.  Plaintiff's argument must, therefore, be rejected.

purpose in submitting the motion was to file these existing materials with the court. (ECF No. 21, at 2). The materials attached to Plaintiff's motion, however, are from DHMH, rather than HCADRO. It appears that Plaintiff may have attached them as support for his assertion that DHMH instructed him to file a complaint directly with that department. But because Neurocare and Rosa Rehab moved to dismiss pursuant to Rule 12(b)(6), "matters outside the pleadings," such as these materials, cannot be considered. Fed.R.Civ.P. 12(d).[16]

**IV. Conclusion**

For the foregoing reasons, Plaintiff's request for voluntary dismissal of the complaint as to Mr. Mann will be granted, as will the motions to dismiss filed by Ameriprise, Neurocare, and Rosa Rehab. Plaintiff's motion for leave to file a supplemental appendix will be denied, and Mr. Mann's motion to dismiss or, alternatively, for summary judgment will be denied as moot. A separate Order will follow.

/s/
_____
DEBORAH K. CHASANOW
United States District Judge

---

[16] In any case, when resolving Neurocare's and Rosa Rehab's motions to dismiss, the court assumed Plaintiff's allegations regarding DHMH's instructions to be true.